**In re PAN LON INTERNATIONAL, INC., Debtor.**

**Bankruptcy No. 85 B 11811 (PBA).**

United States Bankruptcy Court, S.D. New York.

June 6, 1986.

Rood, Schwartz, Cohen & Ruderman, White Plains, N.Y., for Chrysler Credit Corp.; Regina R. Matson, of counsel.

Law Offices of Marvin Neiman, New York City, for Pan Lon International, Inc., debtor-in-possession.

Goldman & Rio, New York City, for Mirron Auto Center.

Michael Grundfast, Smithtown, N.Y., for Schaeffer Agency.

Horvath & Young, New York City (Harold Young, Esq., of counsel), trustee.

## MEMORANDUM DECISION
## AND ORDER

PRUDENCE B. ABRAM, Bankruptcy Judge:

By notice of motion dated December 24, 1985, Chrysler Credit Corporation ("Chrysler") sought to have the automatic stay vacated so that it could foreclose its security interest on a 1982 Chrysler LeBaron Serial No. 1C3B46B2CC194487 (the "Car"). As of November 5, 1985, Chrysler was owed $3,554 and Chrysler had received no payments after July 1985. The retail installment contract with Chrysler had been entered into by the Debtor, Pan Lon International, Inc. ("Pan Lon") on August 9, 1982.

Pan Lon filed a petition for reorganization under Chapter 11 on November 5, 1985. The case was converted to a Chapter 7 liquidation by order dated April 14, 1986.

At the return date of Chrysler's motion, the court was advised that the Car had been in an accident after the petition was filed, that insurance proceeds had apparently been received by the Debtor and that the Car was in the possession of an auto body shop, which by notice dated January 13, 1986 had advised that it would auction the Car on February 21, 1986 unless it was paid $4,887.08. Chrysler subsequently on January 29, 1986 filed an amended motion on notice to Mirron Auto Center, Inc. ("Mirron"), the body shop.

A hearing was held on the amended motion on February 13, 1986, at which Pan Lon's president, Yaakov Douek, testified. He stated that the Car was in an accident on Thanksgiving Day 1985 at which time the Car went out of control on a divided highway and skidded front and back into the divider. He stated that

"There was a lot of body work damage. The car itself was running fine." Transcript 2/13/86 at 21.

Mr. Douek testified that he called his insurance broker who advised him to take the Car to a body shop. A day or two after the accident Mr. Douek took the Car to Mirron:

"I went to Mirron. When I originally got to Mirron—I have gone to Mirron for other repairs and I told them I figure this is an estimate and if it takes a few days of your time, it should cost $50 or maybe $100. He says don't worry about it and then I didn't. Then I came back and he said I want $500. I told him I don't have the $500; this is a matter that belongs to the estate of Pan Lon and we don't have that kind of money to pay otu [sic] right now. He says in that case I want stoarge [sic] and I want the fact that I took the time to work with the adjuster and give you a good estimate and if you can't pay me the $500, I am going to put a lien on the car.

"Q. A lien for what?

"A. For storage, etc. * * * [T]he lien that was told me by the way was that it was for storage, not for repairs." Transcript 2/13/86 at 23–24 and 29.

Mr. Douek denied having given Mirron authority to repair the car.[1]

It further appeared from Mr. Douek's testimony that an insurance check in an amount somewhat over $4,000 was sent directly to the Schaeffer Agency ("Schaeffer"), and retained by Schaeffer as part payment of a claim for unpaid pre- and post-petition insurance premiums due from Pan Lon.

The court urged that the parties attempt to reach a resolution of the matter. Under New York lien laws, it appeared that Mirron would have a lien superior to that of Chrysler to the extent it could demonstrate

---

1. Mr. Douek testified

"I had no reason to incidentally want to fix the car because it was just—the moneys were about—were probably more than what Pan Lon owed the auto company." Transcript 2/13/86 at 19.

Earlier in the hearing, counsel for Pan Lon after stating the Car was brought to Mirron to hold for the adjuster and for an estimate of repairs, said

"At that time we assumed it would be about $150 to $200. It seemed to be a fender bender." Transcript, 2/13/86 at 2.

that it performed services on the Car at the request of the owner.

A stipulation of settlement has been submitted to this court for its approval. It provides for Schaeffer to pay $3,554 of the insurance proceeds to Chrysler in full settlement of Chrysler's claim and for Schaeffer to retain $733, being apparently the balance of the $4,287 of the insurance received, as part payment for the post-petition debts of Pan Lon to Schaeffer. The stipulation further provides that Mirron shall sell the Car at auction and retain the proceeds up to the amount of Mirron's claim of $4,887.08 in full satisfaction of its mechanic's lien, with any excess being payable to Pan Lon.

This court declines to approve the settlement stipulation because it fixes the amount of Mirron's claim. Mirron has never filed a claim in this case and has submitted no document under oath detailing the services it alleges it performed. Mirron's attorney submitted an affidavit which merely states that Mirron "rendered services to the debtor in the sum of $4,487.08." [2] Mr. Douek's testimony raised a serious question as to whether Mirron performed any services or repair work on the Car. The proposed stipulation contains nothing which supplements the prior record on this point.

Bankruptcy Code § 503(a) states that an entity may file a request for payment of an administrative expense. Mirron's claim would be an expense of administration provided Mirron could prove that the repairs were authorized and that it had actually performed repairs to the extent of the value claimed, $4,887.08.[3] No appropriate proof having been offered, this court cannot allow Mirron's claim at this time.

Chrysler's lien having been established, the court directs that Mirron surrender the Car to Chrysler. Chrysler is hereby authorized to sell it and retain the proceeds up to the amount of its lien in satisfaction of its lien, the overage, if any, to be paid to the Trustee. Schaeffer is hereby directed to turnover the sum of $3,554 to the Trustee, Harold Young, to be held by Mr. Young subject to the rights, if any, of Chrysler and Mirron to the insurance proceeds. As to the remaining $733, Schaeffer may retain that sum pro tem subject to any rights of the Trustee to avoid the transfer previously made by the Debtor in Possession.

It is so ordered.

---

2. The settlement stipulation as well as the notice of lien and sale refer to $4,887.08, an amount exactly $400 more than the attorney states.

3. This amount is exactly $600 more than the amount of the insurance proceeds.